**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (030204)
Christopher J. Bendau (032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Facsimile: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
        chris@bendaulaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Tiffany Pulido**, | No. |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT** |
| **Desert Platinum Properties, LLC**, an Arizona Limited Liability Company, and **Jay Macklin and Michelle Macklin**, a married couple, | |
| Defendants. | |

Plaintiff, Tiffany Pulido ("Plaintiff" or "Tiffany Pulido"), sues the Defendants,

Desert Platinum Properties, LLC ("Desert Platinum Properties, LLC" or "Platinum

Living Real Estate"), and Jay Macklin and Michelle Macklin (all Defendants are

collectively referred to as "Defendants"); and alleges as follows:

## **PRELIMINARY STATEMENT**

1.      This is an action for unpaid minimum and overtime wages, liquidated

damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, et seq.; unpaid minimum wages, liquidated damages,

attorneys' fees, costs, and interest under the Arizona Minimum Wage Act ("AMWA"), Arizona Revised Statutes ("ARS") § 23-363, et seq.; and unpaid wages, treble damages, and interest under the Arizona Wage Act ("AWA"), Arizona Revised Statutes ("ARS") § 23-350, et seq.

2.     The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours."  Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981).  Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.  See 29 U.S.C. § 206(a).  Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  See 29 U.S.C § 207.

3.     The AMWA, A.R.S § 23-363, et seq., establishes a minimum wage within the State of Arizona.

4.     The AWA, A.R.S. § 23-350, et seq., establishes standards for wage payments to employees within the State of Arizona.

5.     Defendants own and operate as "Platinum Living Real Estate," a real estate brokerage doing business and located in the Phoenix Metropolitan Area.

6.     Plaintiff worked as a transaction coordinator for Defendants.

7.     As explained herein, under applicable employment laws, unless an employee is determined to be exempt, all employees are entitled to overtime compensation for all hours worked in excess of 40 hours in a given workweek. Moreover, employees are entitled to earn the applicable federal and state minimum wages

for all hours worked.  However, Plaintiff regularly worked in excess of 40 hours per week, without receiving overtime compensation as required by the FLSA.  Further, Defendants failed to pay Plaintiff the applicable statutory minimum wage for all hours worked in a given workweek.

8.    Indeed, Defendants did not pay Plaintiff any wage whatsoever for the six weeks of work she performed for Defendants.

9.    Instead, Plaintiff was improperly classified as an independent contractor and was supposed to have been paid exclusively on a piece rate basis.  This practice resulted in Plaintiff having regularly received less than the applicable minimum wage in every workweek during which she worked for Defendants.  In addition, Plaintiff was entitled to but was not paid one and one-half times her regular rate of pay for work she performed in excess of 40 hours per workweek.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the District of Arizona, and

Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## **PARTIES**

12.     At all times material to the matters alleged in this Complaint, Plaintiff was an individual residing in Maricopa County, Arizona, and is a former employee of Defendants.

13.     At all material times, Defendant Desert Platinum Properties LLC was an Arizona limited liability company duly licensed to transact business in the State of Arizona.  At all material times, Defendant Desert Platinum Properties LLC does business, has offices, and/or maintains agents for the transaction of its customary business in Maricopa County, Arizona.

14.     At all relevant times, Defendant Desert Platinum Properties LLC owned and operated as a real estate brokerage in the Phoenix Metropolitan Area.

15.     Under the FLSA, Defendant Desert Platinum Properties LLC is an employer.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant Desert Platinum Properties LLC had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As a person who acted in the interest of Defendants in relation to Defendants' employees, Defendant Desert Platinum Properties LLC is subject to liability under the FLSA.

16.     Defendants Jay Macklin and Michelle Macklin are, upon information and belief, husband and wife.  They have caused events to take place giving rise to the claims in this Complaint as to which their marital community is fully liable.  Jay Macklin and Michelle Macklin are owners of Defendant Desert Platinum Properties LLC and were at all relevant times Plaintiff's employers as defined by the FLSA, 29 U.S.C. § 203(d).

17.     Under the FLSA, Defendants Jay Macklin and Michelle Macklin are employers under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendants Jay Macklin and Michelle Macklin had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As persons who acted in the interest of Defendants in relation to Defendants' employees, Defendants Jay Macklin and Michelle Macklin are subject to individual liability under the FLSA.

18.     Plaintiff is further informed, believes, and therefore alleges that each of the Defendants herein gave consent to, ratified, and authorized the acts of all other Defendants, as alleged herein.

19.     Defendants, and each of them, are sued in both their individual and corporate capacities.

20.     Defendants are jointly and severally liable for the injuries and damages sustained by Plaintiff.

... 

21.     At all relevant times, Plaintiff was an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

22.     The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendants.

23.     At all relevant times, Defendants were and continue to be "employers" as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

24.     Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

25.     On information and belief, Plaintiff, in her work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales or gross revenue of at least $500,000.

26.     At all relevant times, Plaintiff, in her work for Defendants, was engaged in commerce or the production of goods for commerce.

27.     At all relevant times, Plaintiff, in her work for Defendants, was engaged in interstate commerce.

28.     Plaintiff, in her work for Defendants, regularly handled goods produced or transported in interstate commerce.

29.     Plaintiff, in her work for Defendants, regularly used the telephone to communicate with clients and/or customers.

30.     Plaintiff, in her work for Defendants, regularly used the internet to communicate with clients and/or customers.

# FACTUAL ALLEGATIONS

31.   Defendants own and/or operate as Platinum Living Real Estate, an enterprise located in Maricopa County, Arizona.

32.   Plaintiff was hired by Defendants in approximately February 2022, and Plaintiff worked for all Defendants until approximately May 2022.

33.   At all relevant times, in her work for Defendants, Plaintiff's job title was "Transaction Coordinator."

34.   At all relevant times, in her work for Defendants, Plaintiff's job function was to help Defendants facilitate real estate transactions.

35.   Plaintiff's primary job duties were administrative and included, but were not limited to, preparing listing documents, prepare necessary agreements and disclosures, input data into MLS for agent use, install yard signs, update third-party websites, communicating with agents regarding documentation, preparing files, helping agents adhere to deadlines, sending contracts to the title company, verifying accuracy of closing documents, and removing yard signs.

36.   Defendants, in their sole discretion, agreed to pay Plaintiff exclusively on a piece rate basis for each home listing in her "file," regardless of the number of hours she worked in a given workweek.

37.   Specifically, Defendants agreed to pay Plaintiff $250 for each home listing that went under contract.

38.   In addition, Defendants agreed to pay Plaintiff $400 for every under-contract listing that closed.

39.     Defendants assigned Plaintiff every file she worked on.

40.     Plaintiff worked a minimum of approximately 17 unique files during her employment with Defendants.

41.     By the end of her employment, Plaintiff had amassed a combination of approximately 17 deals that had either went under contract and/or closed.

42.     To date, Defendants have not paid Plaintiff any wages whatsoever that have been due and owing to her.

43.     To date, Defendants continue to withhold Plaintiff's wages that are due and owing to her.

44.     In her work for Defendants, Plaintiff regularly worked in excess of 40 hours in a given workweek.

45.     In her work for Defendants, Plaintiff regularly worked in excess of 40 hours in a given workweek without receiving overtime pay.

46.     Rather than classify Plaintiff as an employee, Defendants classified her as an independent contractor.

47.     Defendants, in their sole discretion, agreed to compensate Plaintiff solely on a piece rate basis.   Though never actually compensated by Defendants for the work she performed, Plaintiff was supposed to be compensated by Defendants in this manner, regardless of how many hours she worked in a given workweek.

48.     Rather than classify Plaintiff as an employee, Defendants classified her as an independent contractor not subject to the FLSA, the AMWA, or the AWA's respective minimum wage, unpaid wage, and overtime provisions.

49.     Plaintiff, in her work for Defendants, worked approximately 60 to 70 hours per week.

50.     As a matter of common policy and practice, Defendants misclassify all of their transaction coordinators as independent contractors not subject to the FLSA, the AMWA, or the AWA's respective minimum wage, unpaid wage, and overtime provisions.

51.     Consistent with this common policy and practice, Plaintiff was intentionally misclassified by Defendants as independent contractors not subject to the FLSA, the AMWA, or the AWA's respective minimum wage, unpaid wage, and overtime provisions.

52.     As a result of Defendants' common misclassification policy, Defendants have not paid a minimum wage or overtime pay to Plaintiff.

53.     To date, Defendants have not paid a minimum wage or overtime pay to Plaintiff.

54.     Specifically, Defendants misclassified Plaintiff as an independent contractor not subject to the FLSA, the AMWA, or the AWA's respective minimum wage, unpaid wage, and overtime provisions and required Plaintiff to work more than 40 hours per week and did not pay her an hourly wage equal to the applicable minimum wage, and did not pay her overtime compensation at a rate of one and one-half times her regular rate of pay.

55.     The work that Plaintiff performed generally required Plaintiff to work from home both at nights and on weekends.

56.    Indeed, Plaintiff was generally at the beck and call of Defendants Jay Macklin, Michelle Macklin, or one of their many real estate agents at any given time during her employment.

57.    The FLSA applied to Plaintiff at all times during which she worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiff for the time she spent working for Defendants.

58.    At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff.

59.    Plaintiff incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying her as exempt and failing to pay her the applicable minimum wage and overtime pay for time worked in excess of 40 hours per week.

60.    Plaintiff incurred financial loss, injury, and damage as a result of Defendants' failing to pay her wages due and owing.

61.    Because Defendants failed to pay Plaintiff proper wages, Plaintiff's entire employment went unpaid.

62.    Defendants' misclassification of Plaintiff as an independent contractor was specifically intended to enhance Defendants' profit margins at the expense of Plaintiff as follows: (1) willfully failing to pay Plaintiff the minimum wage in violation of the FLSA and the AMWA; (2) willfully suffering and permitting Plaintiff to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one and one-half times her regular rate of pay, in violation of the FLSA; and (3) failing or

refusing to pay wages to Plaintiff that she earned in the course of her employment with Defendants.

63.     Defendants knew or should have known that it was improper to classify Plaintiff as an independent contractor.

64.     Workers in Plaintiff's position cannot "elect" to be treated as employees or independent contractors.  Nor can workers in Plaintiff's position agree to be paid less than the applicable minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce Plaintiff to waive her statutory rights and elect to be treated as an independent contractor.

65.     Any contract which attempts to have Plaintiff waive, limit, or abridge her statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

66.     The determining factor as to whether Plaintiff is an employee or independent contractor under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

67.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3)

the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

68.     The totality of circumstances surrounding the employment relationship between Defendants and Plaintiff establishes economic dependence by Plaintiff on Defendants and, thus, employee status.  Here, Plaintiff was not in business for herself and truly independent, but rather was economically dependent upon finding employment in Defendants.  Plaintiff was not engaged in occupations or businesses distinct from that of Defendants.  To the contrary, Defendants retained pervasive control over the business operation as a whole, and over Plaintiff, too.

**Degree of Control Exercised by Defendants**

69.     Plaintiff did not exert control over any meaningful part of Defendants' business operation and did not stand as a separate economic entity from Defendants. Defendants exercised control over all aspects of the working relationship with Plaintiff.

70.     Plaintiff's economic status was inextricably linked to conditions over which Defendants had complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

71.     Defendants exercised the following significant control over the work conditions of Plaintiff:

a.  Defendants required Plaintiff to adhere to a mandatory schedule: Each and every workweek, Defendants required Plaintiff to work a set weekly schedule;

b.  As a result, Plaintiff was required to routinely work in excess of 60 hours per week;

c.  Defendants required Plaintiff to come into the office or travel to a given destination at their beck and call;

d.  Defendants required Plaintiff to use letterhead and other marketing material bearing Defendants' logo;

e.  Defendants created a public persona or profile for Plaintiff that tended to show she was an employee of theirs;

f.  Defendants assigned Plaintiff all deals she worked;

g.  Defendants set Plaintiff's rate of pay;

h.  Defendants required Plaintiff to maintain and use a Platinum Living Real Estate email address;

i.  Defendants provided necessary tools and equipment Plaintiff to use; and

j.  Plaintiff had no right to refuse work assigned to her by Defendants.

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

72.  Plaintiff did not exercise the skill and initiative of a person in business for oneself.

73.     Plaintiff was not required to have any specialized or unusual skills to perform her job.  The skills used in performing sales work are commensurate with those exercised by ordinary people.

74.     Plaintiff did not have the opportunity to exercise the business skills and initiative necessary to elevate her status to that of an independent contractor: she owned no enterprise, nor did she maintain a separate business structure or facility.

75.     Defendants did not permit Plaintiff to hire or subcontract other individuals to provide additional sales work to customers, thereby increasing her revenue, as an independent contractor in business for herself would have the authority to do.

**Facts Establishing Relative Investment**

76.     Plaintiff's relative investment is minor when compared to the investment made by Defendants.

77.     Plaintiff made no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belonged to Defendants.

78.     Plaintiff's investment was limited to costs of business cards and other onboarding expenses.  Absent Defendants' investment and provision of the business, Plaintiff would not have earned anything.

**Facts Establishing Opportunity for Profit and Loss**

79.     Defendants managed all aspects of the business operation, including without limitation attracting customers, establishing business relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and

controlling of staff.  Defendants provided all necessary capital to open and operate the business.

80.     Plaintiff did not have responsibility for any aspect of Defendants' ongoing business risk.

**Facts Establishing Permanency**

81.     Plaintiff was hired to work for Defendants for an indefinite duration worked for Defendants for nearly two months.

**Fact Establishing Plaintiff was an Integral Part of Defendants' Business**

82.     Plaintiff was critical to Defendants' success.  Defendants' operation was wholly dependent on home sales, and home sales could not happen without the work that Plaintiff performed.

83.     The primary "product" or "good" Defendants are in business to sell consists of homes which are sold to customers by real estate agents, and Plaintiff played a significant role in assisting Defendants and their agents sell those homes.

84.     Plaintiff was economically dependent on Defendants and subject to significant control by Defendants.

85.     Despite Defendants having misclassified Plaintiff as an independent contractor, Plaintiff was actually an employee, as defined by the FLSA, 29 U.S.C. § 201 et seq.

86.     In her work for Defendants, and throughout her entire employment with Defendants, Plaintiff was not compensated $455 per week on a salary basis.

87.     Defendants controlled Plaintiff's schedules.

88.     Defendants required Plaintiff to come into the office to work every day.

89.     At all relevant times, Defendants did not pay Plaintiff one and one-half times her regular rates of pay for time spent working in excess of 40 hours in a given workweek.

90.     During the time that Plaintiff worked for Defendants, Plaintiff regularly worked hours in a given workweek without receiving any even the applicable minimum wage, in violation of the FLSA, 29 U.S.C. § 206(a).

91.     During the time that Plaintiff worked for Defendants, Plaintiff regularly worked hours in a given workweek without receiving any even the applicable minimum wage, in violation of the AMWA, ARS § 23-363.

92.     During the time that Plaintiff worked for Defendants, Plaintiff regularly worked in excess of 40 hours in a given workweek without receiving any overtime premium whatsoever, in violation of the FLSA, 29 U.S.C. § 207(a).

93.     Defendants classified Plaintiff as an independent contractor to avoid their obligation to pay Plaintiff one and one-half times her regular rate of pay for all hours worked in excess of 40 hours per week.

94.     Plaintiff was a non-exempt employee.

95.     Plaintiff was not a manager in her work for Defendants.

96.     Plaintiff did not have supervisory authority over any employees in her work for Defendants.

97.     Plaintiff did not possess the authority to hire or fire employees in her work for Defendants.

98.    Plaintiff did not possess the authority to make critical job decisions with respect to any of Defendants' employee in her work for Defendants.

99.    Plaintiff did not direct the work of two or more employees in her work for Defendants.

100.    Plaintiff did not exercise discretion and independent judgment with respect to matters of significance in her work for Defendants.

101.    Plaintiff's primary duty was not the management of the enterprise in which she was employed or any recognized department of the enterprise in her work for Defendants.

102.    In addition, Plaintiff worked extensive time outside of normal business hours, during mornings, evenings, and weekends.

103.    At all relevant times, Defendants failed to properly compensate Plaintiff for any of her overtime hours.

104.    Defendants refused and/or failed to properly disclose to or apprise Plaintiff of her rights under the FLSA.

105.    Plaintiff is a covered employee within the meaning of the FLSA.

106.    Defendants refused and/or failed to properly disclose to or apprise Plaintiff of her rights under the FLSA.

107.    Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

108.    Due to Defendants' illegal wage practices, Plaintiff is entitled to recover from Defendants compensation for unpaid minimum and overtime wages, an additional

1   amount equal amount as liquidated damages, interest, and reasonable attorney's fees and

2   costs of this action under 29 U.S.C. § 216(b).

3

**COUNT ONE: FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY OVERTIME**

4

5   109.   Plaintiff realleges and incorporates by reference all allegations in all

6   preceding paragraphs.

7

8   110.   Plaintiff was a non-exempt employee entitled to statutorily mandated

9   overtime wages.

10   111.   In a given workweek, Defendants failed to pay one and one-half times the

11   applicable regular rate of pay for all hours worked in excess of 40 hours.

12

13   112.   As a result of Defendants' failure to pay Plaintiff one and one-half times

14   her regular rate for all hours worked in excess of 40 per week in a given workweek,

15   Defendants failed and/or refused to pay Plaintiff the applicable overtime rate for all hours

16   worked for the duration of her employment, in violation of 29 U.S.C. § 207.

17

18   113.   As a result of Defendants' willful failure to compensate Plaintiff the

19   applicable overtime rate for all hours worked, Defendants violated the FLSA.

20   114.   As such, the full applicable overtime rate is owed for all hours that Plaintiff

21   worked in excess of 40 hours per week.

22

23   115.   Defendants knew that – or acted with reckless disregard as to whether –

24   their failure to pay Plaintiff the proper overtime rate would violate federal and state law,

25   and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's

26   employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

27

116.   Defendants have and continue to willfully violate the FLSA by not paying Plaintiff a wage equal to one- and one-half times the applicable regular rate of pay for all time Plaintiff spent working for Defendants.

117.   Plaintiff is therefore entitled to compensation one and one-half times her regular rate of pay for all hours worked in excess of 40 per week at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, costs, and reasonable attorney fees.

**WHEREFORE**, Plaintiff, Tiffany Pulido, respectfully requests that this Court grant the following relief in Plaintiff's favor, and against Defendants:

A.   For the Court to declare and find that the Defendants committed one of more of the following acts:

    i.   Violated overtime wage provisions of the FLSA, 29 U.S.C. § 207(a), by failing to pay proper minimum wages;

    ii.   Willfully violated overtime wage provisions of the FLSA, 29 U.S.C. § 207(a) by willfully failing to pay proper overtime wages;

B.   For the Court to award Plaintiff's unpaid overtime wage damages, to be determined at trial;

C.   For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), to be determined at trial;

D.   For the Court to award prejudgment and post-judgment interest;

E.      For the Court to award Plaintiff reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth herein;

F.      Such other relief as this Court shall deem just and proper.

<u>**COUNT TWO: FAIR LABOR STANDARDS ACT**</u>
<u>**FAILURE TO PAY MINIMUM WAGE**</u>

118.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119.    Plaintiff was a non-exempt employee entitled to the statutorily mandated minimum wage.

120.    In a given workweek, Defendants failed to pay any wage whatsoever for the entire duration that Plaintiff worked for Defendants.

121.    As a result of Defendants' failure to pay Plaintiff any wage whatsoever for the entire duration that Plaintiff worked for Defendants, Defendants failed and/or refused to pay Plaintiff the applicable minimum wage rate for all hours worked for the duration of her employment, in violation of 29 U.S.C. § 207.

122.    As a result of Defendants' willful failure to compensate Plaintiff any wage whatsoever for the entire duration that Plaintiff worked for Defendants, Defendants violated the FLSA.

123.    As such, the full applicable minimum wage rate is owed for all hours that Plaintiff worked.

124.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

125.    Defendants have and continue to willfully violate the FLSA by not paying Plaintiff the applicable minimum wage for all time Plaintiff spent working for Defendants.

126.    Plaintiff is therefore entitled to compensation for the applicable minimum wage, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, costs, and reasonable attorney fees.

**WHEREFORE**, Plaintiff, Tiffany Pulido, respectfully requests that this Court grant the following relief in Plaintiff's favor, and against Defendants:

G.    For the Court to declare and find that the Defendants committed one of more of the following acts:

      i.    Violated overtime wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay proper minimum wages;

      ii.    Willfully violated overtime wage provisions of the FLSA, 29 U.S.C. § 206(a) by willfully failing to pay proper minimum wages;

H.    For the Court to award Plaintiff's unpaid minimum wage damages, to be determined at trial;

I.    For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), to be determined at trial;

J.    For the Court to award prejudgment and post-judgment interest;

K.    For the Court to award Plaintiff reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth herein;

L.    Such other relief as this Court shall deem just and proper.

## COUNT THREE: ARIZONA MINIMUM WAGE ACT
## FAILURE TO PAY MINIMUM WAGE

127.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

128.    As a result of not paying Plaintiff any wage whatsoever for the entire duration of her employment, Defendant failed to pay Plaintiff the applicable Arizona minimum wage.

129.    Defendant's practice of failing or refusing to pay Plaintiff at the required minimum wage rate violated the AMWA, 23-363.

130.    Plaintiff is therefore entitled to compensation for the full applicable minimum wage at an hourly rate, to be proven at trial, plus an additional amount equal to twice the underpaid wages as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Tiffany Pulido, respectfully requests that this Court grant the following relief in Plaintiff's favor, and against Defendants:

A.     For the Court to declare and find that the Defendants violated minimum wage provisions of the AMWA, A.R.S. § 23-363 by failing to pay proper minimum wages;

B.     For the Court to award Plaintiff's unpaid minimum wage damages, to be determined at trial;

C.     For the Court to award compensatory damages, including liquidated damages pursuant to A.R.S. § 23-364, to be determined at trial;

D.     For the Court to award prejudgment and post-judgment interest;

E.     For the Court to award Plaintiff reasonable attorneys' fees and costs of the action pursuant to A.R.S. § 23-364 and all other causes of action set forth herein;

F.     Such other relief as this Court shall deem just and proper.

## COUNT FOUR: ARIZONA WAGE ACT
## FAILURE TO PAY WAGES DUE AND OWING

131.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

132.    As a result of the allegations contained herein, Defendants did not compensate Plaintiff wages due and owing to her.

133.    Specifically, Defendants failed to compensate Plaintiff any wages whatsoever for the entire duration of her employment.

134.   As a result of failing to compensate Plaintiff any wages whatsoever for the entire duration of her employment, Defendants failed to compensate Plaintiff all wages due and owing in violation of A.R.S. § 23-350.

135.   As such, unpaid wages for such time Plaintiff worked are owed to Plaintiff for the entire time she was employed by Defendants.

136.   Defendants knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiff over the course of her employment would violate federal and state law, and Defendants were aware of the Arizona Wage Act's requirements during Plaintiff's employment. As such, Defendants' conduct constitutes a willful violation of the Arizona Wage Act.

137.   Plaintiff is therefore entitled to compensation for her unpaid wages, to be proven at trial, in an amount that is treble the amount of her unpaid wages, plus interest thereon, and her costs incurred.

**WHEREFORE**, Plaintiff, Amanda Cardenas, requests that this Court grant the following relief in Plaintiff's favor, and against Defendants:

A.   For the Court to declare and find that the Defendants violated the unpaid wage provisions of A.R.S. § 23-350, et seq., by failing to pay wages due and owing to Plaintiff;

B.   For the Court to award an amount that is treble Plaintiff's unpaid wages pursuant to A.R.S. § 23-355, in amounts to be determined at trial;

C.   For the Court to award prejudgment and post-judgment interest on any damages awarded;

D.      For the Court to award Plaintiff's reasonable attorneys' fees and costs of

the action and all other causes of action set forth in this Complaint; and

E.      Such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 5th day of October 2022.

BENDAU & BENDAU PLLC

By: /s/ *Clifford P. Bendau, II*
Christopher J. Bendau
Clifford P. Bendau, II
*Attorneys for Plaintiff*

-25-

1

## **<u>VERIFICATION</u>**

2

   Plaintiff, Tiffany Pulido, declares under penalty of perjury that she has read the

3

foregoing Verified Complaint and is familiar with the contents thereof.  The matters

4

asserted therein are true and based on her personal knowledge, except as to those matters

5

6

stated upon information and believe, and, as to those matters, she believes them to be

7

true.

8

9

*Tiffany Pulido*

10

Tiffany Pulido (Oct 6, 2022 09:48 PDT)

Tiffany Pulido

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# PULIDO; PLAINTIFF'S COMPLAINT DRAFT 2 (TO CLIENT); 10-5-22

Final Audit Report                                                2022-10-06

| | |
|---|---|
| Created: | 2022-10-06 |
| By: | Clifford Bendau (cliffordbendau@bendaulaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAbOL6ximmp6x6di5I8jdHV637fVBSCu0X |

## "PULIDO; PLAINTIFF'S COMPLAINT DRAFT 2 (TO CLIENT); 10-5-22" History

Document created by Clifford Bendau (cliffordbendau@bendaulaw.com)
2022-10-06 - 2:42:32 AM GMT- IP address: 72.208.145.31

Document emailed to sweettmoves@gmail.com for signature
2022-10-06 - 2:43:10 AM GMT

Email viewed by sweettmoves@gmail.com
2022-10-06 - 2:43:16 AM GMT- IP address: 66.249.84.91

Signer sweettmoves@gmail.com entered name at signing as Tiffany Pulido
2022-10-06 - 4:48:19 PM GMT- IP address: 70.163.157.224

Document e-signed by Tiffany Pulido (sweettmoves@gmail.com)
Signature Date: 2022-10-06 - 4:48:20 PM GMT - Time Source: server- IP address: 70.163.157.224

Agreement completed.
2022-10-06 - 4:48:20 PM GMT

Adobe Acrobat Sign